## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lori M. S.,                                              No. 23-cv-1771 (DLM)

                        Plaintiff,

v.

Martin J. O'Malley,                                      **ORDER**
Commissioner of Social Security
Administration,

                        Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lori M. S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 10–11 (Plaintiff's motion and memorandum), 16 (Commissioner's motion and memorandum), 17 (Plaintiff's reply memorandum).) Both parties have voluntarily consented to the undersigned magistrate judge's review of this matter. For the reasons below, the Court grants in part and denies in part Plaintiff's motion, grants in part and denies in part Defendant's motion, and orders that this matter be remanded to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

On June 17, 2021, Plaintiff applied for Disability Insurance Benefits ("DIB"), alleging that she had been disabled since March 13, 2020. (Tr.[1] at 198–99.) The Social Security Administration ("SSA") denied her claim initially (Tr. at 93–94), and upon reconsideration (Tr. at 113–14.) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing by telephone on the matter on July 13, 2022. (Tr. at 117–18 (request for hearing), 36–69 (hearing transcript)). Counsel represented Plaintiff at the hearing, and Plaintiff testified on her own behalf. (Tr. at 36, 38, 46–62.) A vocational expert also testified, concluding that if Plaintiff were limited to light work with some postural and environmental limitations, she could still perform her past work as a secretary. (Tr. at 62–67.) Plaintiff's counsel had no questions for the vocational expert during the hearing. (Tr. at 67–68.)

On July 25, 2022, the Commissioner sent his notice of an unfavorable decision to Plaintiff. (Tr. at 14–16 (notice), 17–30 (decision).) The ALJ recognized that Plaintiff suffered from several severe impairments, including "bilateral carpal tunnel syndrome; seizures; left shoulder tendonitis; generalized anxiety disorder; panic disorder; and major depression." (Tr. at 20.) He also found that Plaintiff had several non-severe impairments, including obesity, hypothyroidism, vitamin D deficiency, a left foot injury, esophageal

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on August 11, 2023. (Doc. 6.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the document rather than the docket page number.

dysphagia, chronic diarrhea, right shoulder bursitis, Ehlers-Danlos Syndrome, and asthma. (*Id.*)

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 18.) First, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b), provided the job included additional postural and environmental limitations to account for Plaintiff's impairments. (Tr. at 24.) Relevant to this review, the RFC included a limitation to "frequent handling and fingering bilaterally" and "occasional interactions with groups of people." (*Id.*)

Next, the ALJ credited the testimony of the vocational expert that Plaintiff could perform her past relevant work as a secretary as listed in the Dictionary of Occupational Titles ("DOT") at DOT No. 201.362-030 with the above limitations. (Tr. at 29.) Because Plaintiff could still perform her past relevant work, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 404.1520(f). (*Id.*) Plaintiff appealed the ALJ's decision, but the SSA's Appeals Council denied her request for further review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–3.)

Plaintiff then filed this federal action seeking judicial review of the Commissioner's decision. (Doc. 1.) Plaintiff raises three challenges to the ALJ's determination that she is not disabled. Her first two arguments are that the ALJ improperly concluded that no physical or mental impairments, respectively, precluded her from work. She claims that in reaching this erroneous conclusion, the ALJ often misrepresented the record, relied on his own speculation about her future improvements, improperly disregarded her subjective

complaints and the medical opinion testimony of Plaintiff's treating surgeon, wrongly attributed persuasive value to the state agency medical consultants' findings, and failed to follow binding regulations and SSA rules. As for Plaintiff's third argument, she claims that the ALJ failed to resolve conflicts between the vocational expert's testimony and the DOT. Based on these errors, Plaintiff asks the Court to reverse the Commissioner's decision and award her benefits.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-

4

1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 404.1520(a)(4)[2] for evaluating DIB claims. Rather, Plaintiff asserts that, in assessing her impairments and their impact on her ability to perform her past relevant work, the ALJ misstated the record and failed to properly apply the applicable rules and regulations. This, she claims, resulted in both legal error and a conclusion that is not substantially supported by the record. The Court will take each of her challenges in turn.

## I.  SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE DOES NOT SUPPORT THE ALJ'S RFC DETERMINATION AS TO PLAINTIFF'S CARPAL TUNNEL IMPAIRMENT.

Plaintiff's first argument is that the ALJ erred in assessing her handling and fingering limitations in her RFC. She claims that, considering the record's subjective and objective evidence on the limiting symptoms of her bilateral carpal tunnel syndrome, she is more impaired than the RFC found. Specifically, if the ALJ properly considered

---

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 404.1520(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

Plaintiff's subjective complaints and deferred more to her treating orthopedic surgeon's opinion—rather than the state agency medical consultants' unsupported findings—the ALJ would have found that Plaintiff no longer has the capability to perform her past work. Plaintiff also argues that the ALJ should not have based her RFC on speculation that her carpal tunnel symptoms would improve once she had a second surgery.

The Commissioner disagrees, arguing that the ALJ properly evaluated the subjective and objective evidence in Plaintiff's case according to the required regulatory factors. He contends that the ALJ rightly credited the record evidence and expert findings suggesting that Plaintiff's limitations did not preclude her from full-time work at a light exertional level, including in her past relevant work as a secretary, even though her treating surgeon's opinion conflicted with this conclusion.

A plaintiff's RFC is the measure of the "the most [they] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all relevant evidence in the record to fashion a plaintiff's RFC, "including medical records, observations of treating physicians and others, and [the plaintiff's] own description of [their] limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *see also* 20 C.F.R. § 404.1545(e) (providing that the ALJ "will consider the limiting effects of all [a plaintiff's] impairment(s), even those that are not severe, in determining [their] residual functional capacity"). "[T]o find a [plaintiff] has the residual functional capacity to perform a certain type of work, the [plaintiff] must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real

world." *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)).

**A.**    **While the ALJ properly considered Plaintiff's subjective reports about the limiting symptoms caused by her carpal tunnel syndrome, substantial evidence in the record does not support his speculation on Plaintiff's anticipated functional abilities after her future surgery.**

Plaintiff's RFC limits her to frequent handling and fingering, but she claims substantial record evidence does not support this conclusion for several reasons. The first reason is that this conclusion is not supported by her subjective testimony, which she claims the ALJ failed to properly consider according to Social Security Ruling ("SSR") 96-8p.

SSR 96-8p, a rule binding on the SSA, requires an ALJ to consider all relevant record evidence, including subjective reports. 1996 WL 374184, at *5 (S.S.A. July 2, 1996). The rule notes that "careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." *Id.*

Here, the ALJ considered Plaintiff's subjective testimony about the limiting symptoms of her carpal tunnel syndrome. (Tr. at 25.) He noted that Plaintiff claimed that she could only use her hands for up to 30 minutes before experiencing debilitating symptoms of numbness and pain, could only lift up to 10 pounds, could not vacuum, could not do light cleaning for more than 15 minutes, could not stir or hold a heavy pot, and often dropped things. (*Id.*) Based on the entire record, however, the ALJ determined that Plaintiff's subjective evidence about the limiting effects of her carpal tunnel syndrome was inconsistent with the medical and other evidence in the record on the intensity, persistence,

and limiting effects of her impairment. (*Id.*) The ALJ recounted portions of the record showing that Plaintiff had undergone an evaluation of her carpal tunnel syndrome in November 2021 and that both of her hands were severely impacted. (Tr. at 26.) As a result, Plaintiff underwent a carpal tunnel surgery on her left, dominant hand in February 2022, which she generally reported diminished her symptoms and led to no recommended use limitations from her surgeon. (*Id.*)  The ALJ noted that this positive trend continued, although in May of 2022 Plaintiff complained of moderate pain. (*Id.*) The ALJ also observed that the treatment plan was for a similar surgery on Plaintiff's right hand to follow in the near future. (*Id.*) Based on Plaintiff's subjective reports and these medical records, the ALJ determined Plaintiff should be limited "to frequent handling and fingering." (*Id.*)

Plaintiff argues that this record, while it may show post-surgical improvements to her left hand, does not support the ALJ's conclusions on handling and fingering limitations when considering the record as a whole. First, Plaintiff has different capabilities in each of her hands that the ALJ could not reasonably account for in a single handling and fingering limitation for both hands. Second, Plaintiff claims that the ALJ's conclusion that surgery rectified all restrictions with Plaintiff's use of her hands is misleading. In fact, Plaintiff notes that the surgeon had recommended Plaintiff use her left hand for activities she could tolerate without imposing any restrictions, but had warned full recovery could take up to a year or more and some functionality might not be regained. Additionally, Plaintiff testified at the July 13, 2022 hearing was that she had not recovered full functionality in her left hand, and, in the meantime, had postponed her right hand surgery because she did not want

8

to "not have any ha[n]d to use at all." (Tr. at 54.) And third, Plaintiff argues that it is mere speculation what functionality she will have after she undergoes right hand surgery.

The Court has reviewed the record and finds some evidence that Plaintiff's carpal tunnel symptoms in her left hand improved with surgery—including based on Plaintiff's subjective testimony. (*See, e.g.*, Tr. at 713–14, 648.) That said, an ALJ may not speculate on the outcome of a future surgery and the anticipated functional limitations that would result from that surgery when fashioning a plaintiff's RFC. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports."); *Noerper v. Saul*, 964 F.3d 738, 746–47 (8th Cir. 2020) (same); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (same); *Wilson v. Astrue*, No. 4:10-cv-1759 (AGF), 2011 WL 4635142, at *10 (E.D. Mo. Sept. 30, 2011) ("Speculation [by an ALJ that the claimant's condition would improve] is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.") (alteration in original) (quoting *Clark-Woods v. Astrue*, No. 4:10-cv-1377 (FRB), 2011 WL 3607558, at *12 (E.D. Mo. Aug. 12, 2011)); *Pleimann v. O'Malley*, No. 4:23-cv-130 (RLW), 2024 WL 1283312, at *9 (E.D. Mo. Mar. 26, 2024) ("In reaching this [RFC] conclusion, the ALJ speculated as to what the outcome of Plaintiff's future surgery would be . . . based on her projection that his shoulder surgery would be successful and resolve his condition, an inference the ALJ was not permitted to draw."); *Rush v. Barnhart*, 432 F. Supp. 2d 969, 1005 (D.N.D. 2006) (rejecting an ALJ's speculation that a plaintiff "would be able to work on a sustained basis at the level he determined if she lost weight" in the future); *Clark-Woods*, 2011 WL 3607558, at *12 ("The ALJ's conclusion that

plaintiff's condition would improve with surgery is speculation, and therefore cannot serve as substantial evidence to support the ALJ's RFC determination.").

Because substantial evidence in the record as a whole does not support the ALJ's conclusion based on impermissible speculation, the Court finds that remand is warranted here. *See, e.g.*, *Nevland*, 204 F.3d at 858; *Wilson*, 2011 WL 4635142, at *10; *Clark-Wood*, 2011 WL 3607558, at *13. On remand, the Commissioner shall perform any further record development required to determine Plaintiff's RFC without reliance on speculation about Plaintiff's future capabilities that cannot constitute substantial evidence.

**B.** **While the ALJ properly followed the requirements of 20 C.F.R. § 404.1520c to evaluate medical opinion evidence, the ALJ impermissibly relied on a speculative evidentiary basis when evaluating the opinions and findings on Plaintiff's carpal tunnel syndrome.**

Along with challenging the ALJ's consideration of her subjective reports, Plaintiff also claims that the ALJ should have given her surgeon's medical opinion greater weight than the findings of the state agency consultants when fashioning Plaintiff's RFC limitations as to handling and fingering.

The governing regulations do not require that an ALJ defer or give specific weight to any medical opinion or findings. *See Austin*, 52 F.4th at 728 (citing 20 C.F.R. § 404.1520c(a)). This reflects a change to the regulations that once required an ALJ to give a treating medical professional's opinion deference and controlling weight. *See* 20 C.F.R. § 404.1527. As of March 27, 2017, ALJs are under the updated requirements found at 20 C.F.R. § 404.1520c. *Compare* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017) *with* 20 C.F.R. § 404.1520c (applicable to claims filed after March 27,

2017). According to these updated regulations, an ALJ must now consider the persuasiveness of medical opinions and findings and explain how they reached their conclusions according to certain factors. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). These factors require that an ALJ "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Austin*, 52 F.4th at 728 (quoting *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)). The first two factors of supportability and consistency are the most important and are the only two factors that an ALJ must explain in their decision, even though all of the factors must be considered. 20 C.F.R. § 404.1520c(a); *see also Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases concluding that an ALJ's failure to address and explain supportability and/or consistency warranted remand). In short, an ALJ's allocation of persuasive value will be considered legally sufficient upon court review for legal error where they explain supportability and consistency in their decision. Here, Plaintiff objects to the persuasive value that the ALJ assigned to the medical evaluations of Drs. Thomas J. Kaiser, M.D., Hallie Richards, M.D., and George Erhard, M.D. The Court will consider each in turn.

First, Plaintiff argues that the ALJ should have assigned greater weight to the opinion of her treating orthopedic surgeon, Dr. Kaiser, because he was best positioned to evaluate the limiting symptoms of her carpal tunnel syndrome and their likely duration. Dr. Kaiser submitted an opinion in April of 2022 that Plaintiff should be limited to lifting and

carrying no more than two pounds in either or both arms; only handle and finger objects for 10% of an eight-hour workday; and only use her hands or fingers continuously for 20 minutes, after which she would require a five-minute rest period. (Tr. at 618.) Dr. Kaiser also opined that Plaintiff was likely to experience good days and bad days with her impairments, was likely to be off task about 25% or more of the time, and was likely to be absent about two days per month due to her symptoms. (Tr. at 618–19.)

The ALJ found Dr. Kaiser's opinion unpersuasive because the ALJ did not believe it accurately represented Plaintiff's long-term limitations. (Tr. at 26.) The ALJ found that because Plaintiff's prognosis was good post-surgery on her left hand, and because she was supposed to undergo surgery on her right hand in the future, the record evidence did not support Dr. Kaiser's recommended limitations. (Tr. at 26–27.)

The ALJ did not address the factor of Plaintiff's examining relationship with Dr. Kaiser. However, this "examining relationship" factor falls under the factors that the SSA "may, but [is] not required to, explain" in making its determination, unlike the mandatory factors of "supportability" and "consistency" which an ALJ must discuss. 20 C.F.R. § 404.1520c(b)(2). In other words, courts assume that an ALJ considered the "examining relationship" when evaluating the persuasiveness of an opinion or finding.

Considering the two factors that an ALJ must address under § 404.1520c, the Court finds that the ALJ discussed his reasons for finding that Dr. Kaiser's opinion lacked consistency with, and support from, the record. (Tr. at 26–27.) The ALJ opined that, based on Plaintiff's good prognosis after her left hand surgery, along with the likelihood that completion of the same surgery on Plaintiff's right hand would further improve her carpal

tunnel symptoms, Dr. Kaiser's opinion lacked persuasive value. (*Id.*) As the Court has previously discussed, the latter basis for the ALJ's conclusion is problematic, as it is based on the ALJ's speculation about Plaintiff's future functional abilities for which no record evidence currently exists. On remand, the ALJ must reconsider this opinion, as well as any new opinion evidence obtained, based on non-speculative record evidence when complying with the requirements of § 404.1520c.

Plaintiff also challenges the ALJ's evaluation of the state agency medical consultants, Drs. Richards and Erhard. Dr. Richards reviewed the record evidence in September 2021 and concluded that despite Plaintiff's pain, Plaintiff needed no manipulative limitations to her RFC and no exertional limitations to her work capabilities. (Tr. at 75, 77.) Turning to Dr. Erhard's later findings in January 2022, he reviewed Plaintiff's carpal tunnel symptoms and treatment and concluded that her RFC should reflect a light exertional level of work. (Tr. at 84, 88.) He also opined that, because of Plaintiff's surgery for her left hand and the future surgery for her right hand, "[i]t is expected there will be symptomatic and functional improvement in this durational interval." (*Id.*) Dr. Erhard added that, despite Plaintiff's symptoms of pain, loss of sensation, and weakness, she could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently, although he found she had some manipulative limitations in both hands and should be limited to frequent handling and fingering. (Tr. at 87–88.)

The ALJ deemed the state agency consultants' findings persuasive as to Plaintiff's carpal tunnel-related limitations, agreeing with Dr. Erhard's assessment that Plaintiff should be limited to a light exertional level with frequent handling and fingering bilaterally.

13

(Tr. at 26.) The ALJ then noted that this is consistent with, and supported by, both Plaintiff's subjective reports that after she underwent surgery on her left hand she experienced significant improvements to her pain, numbness, and tingling, and with Plaintiff's eligibility for a surgery on her right hand in the near future. (Tr. at 27.)

The Court finds that, as required by 20 C.F.R. § 404.1520c(b)(2), the ALJ provided the required discussion of Dr. Erhard's findings that Plaintiff should be limited to a light exertional level with frequent handling and fingering bilaterally. Again, though, Dr. Erhard's conclusion that Plaintiff's functional abilities would improve after another surgery is speculative. Thus, even though the ALJ noted that these findings were consistent with, and supported by, the record concerning Plaintiff's real and anticipated post-surgical symptom improvements—in compliance with § 404.1520c—the resulting conclusion is not supported by substantial evidence in the record because it is based on speculation. On remand, the ALJ must reconsider these findings, as well as any new opinion evidence obtained, based on non-speculative record evidence when complying with the requirements of § 404.1520c.

**II.    SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE SUPPORTS THE ALJ'S RFC DETERMINATION AS TO PLAINTIFF'S MENTAL IMPAIRMENTS AND HER RELATED ABILITY TO PERFORM HER PAST WORK, INCLUDING PLAINTIFF'S LIMITATION TO ONLY OCCASIONAL INTERACTIONS WITH GROUPS OF PEOPLE.**

Plaintiff's second argument is that the ALJ erred in assessing the social interaction limitations in her RFC because, considering the record's subjective and objective evidence on the limiting symptoms of her anxiety, depression, and panic disorders, Plaintiff is more impaired than the RFC reflects. Had the ALJ properly considered the evidence that

14

Plaintiff's symptoms wax and wane, that her medications often changed, and that workplace stress would likely exacerbate her symptoms further, she claims that the ALJ would have found that she cannot sustain occasional interactions with groups of people and thus cannot perform her past work.

The Commissioner disagrees, arguing that the ALJ properly evaluated the subjective and objective evidence in Plaintiff's case, including monthly mental health treatments and evaluations and Plaintiff's own subjective reports, but concluded that Plaintiff retained the ability to interact with groups of people occasionally despite her impairments.

Again, a plaintiff's RFC is the measure of the "the most [they] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all relevant evidence in the record when creating a plaintiff's RFC, *Anderson*, 51 F.3d at 779, and must find that a plaintiff can perform that RFC in the day-in, day-out conditions of a work environment that will involve stressful conditions at times, *Reed*, 399 F.3d at 923. Plaintiff's RFC limits her to occasional interactions with groups of people, but she claims substantial record evidence does not support this conclusion. For the reasons that follow, the Court disagrees.

Courts will not reverse an ALJ's decision "if there is evidence that a reasonable mind would accept, but less than a preponderance of evidence in the record as a whole, to support the . . . decision." *Cronin v. Saul*, 945 F.3d 1062, 1066 (8th Cir. 2019). In reviewing the evidence, courts must consider evidence that supports an ALJ's decision, as well as evidence that would support an alternative outcome. *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) ("If, after reviewing the record, the court finds it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). "In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record." *Kness v. Astrue*, 757 F. Supp. 2d 892, 898 (S.D. Iowa 2010) (citing *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir. 1998)).

In determining that Plaintiff could interact with groups of people on an occasional basis in her RFC, the ALJ considered a variety of evidence for the years of 2020, 2021, and 2022. This included subjective evidence about the limiting symptoms of Plaintiff's anxiety and panic attacks, leading her to feel anxious about telephone conversations and making embarrassing mistakes in front of others. (Tr. at 25.) Plaintiff also claimed that her anxiety became worse during the COVID-19 pandemic. (*Id.*) The ALJ reviewed the record of Plaintiff's symptoms and psychological evaluations during 2020, noting increased panic attacks, difficulty with anxiety at work, and new diagnoses of generalized anxiety and panic disorders. (Tr. at 27.) The ALJ observed that while Plaintiff's mood was recorded as anxious and depressed, her mental status findings were often normal, and she reported medications were significantly improving her symptoms. (*Id.*) When she continued to have some panic symptoms, her medication was increased, and Plaintiff reported fewer panic attacks and better controlled anxiety. (*Id.*) The ALJ recounted that in 2021, Plaintiff's depression increased, and she received a diagnosis of generalized anxiety, panic, and major depressive disorders classified as "recurrent moderate." (*Id.*) Plaintiff's mental status examination results continued to be generally normal, although she reported that her social

anxiety was causing her to need to sleep for 12 hours every day and that she was struggling with depression and anxiety. (Tr. at 28.) The ALJ noted that by fall and winter of 2021, Plaintiff appeared to have improved mood-related symptoms and was able to enjoy time with her family, attend wrestling matches, and celebrate the holidays with friends. (*Id.*) In 2022, Plaintiff's mood was documented as depressed and anxious, and evaluations found her depression and anxiety were moderate, although her other mental status examination findings continued to be normal. (*Id.*) She was prescribed a new medication. (*Id.*)

In addition to these evaluations, the ALJ also considered assessments by the state agency psychological consultants, Cynthia Crandall, Ph.D., L.P., and Jeffrey Boyd, Ph.D., L.P., and by Plaintiff's treating psychologist, Dr. David L. Kuehl, Psy.D., L.P. (Tr. at 28–29, 73–74, 85–86, 639–40, 763.) The ALJ determined that the findings of the state agency consultants were partially persuasive, agreeing with their general assessment that Plaintiff's mental impairments were non-severe, caused no greater than mild functional impairments, and did not require RFC limitations, although he determined that the consultants underestimated Plaintiff's subjective testimony about her anxiety around groups of people and found "a moderate limitation in her ability to interact with others to be supported." (Tr. at 28.) As to Dr. Kuehl's assessments, the ALJ observed that Plaintiff typically had mild to minimal self-reported anxiety symptoms, although Dr. Kuehl often observed Plaintiff's mood to be sad and anxious. (Tr. at 29.) The ALJ noted a documented spike in Plaintiff's anxiety in May 2022, but the ALJ also noted that during that same month, Plaintiff reported enjoying a trip with her husband to the Black Hills. (*Id.*) She also expressed a desire to restart anxiety medications that she had stopped taking. (*Id.*)

Summing up the evidence, the ALJ found that Plaintiff's course of treatment "show[ed] some fluctuation in symptoms, but overall, reflect[ed] normal mental status findings." (Tr. at 28.) He noted that although Plaintiff reports problems being around larger groups, she could attend wrestling matches, supporting a finding that she could tolerate occasional interactions with groups of people. (Tr. at 29.) The ALJ also observed that, although Plaintiff claimed that telephone conversations exacerbate her anxiety, the ALJ found no objective medical evidence corroborating this, nor did he observe Plaintiff to experience problems with her anxiety during the July 13, 2022 telephone hearing. (*Id.*) Based on the subjective and objective evidence, the ALJ found that "[g]reater limitations" to her RFC related to her mental impairments were "not supported by the record." (*Id.*) He then relied on the vocational expert's testimony that Plaintiff could still perform her past secretarial work according to the description found in DOT No. 201.362-030, finding that "[t]his job can be performed within the limitations from the residual functional capacity, including the restriction on interactions with groups." (*Id.*)

The Court finds, on this record, that substantial evidence in the record supports the ALJ's determination that Plaintiff could still perform her past work with some limitations to account for her anxiety about groups of people. While Plaintiff claims that she cannot perform the "frequent" social interactions required by her past work, as discussed above, the ALJ found that the record evidence did not support greater social limitations for Plaintiff beyond limiting her to only occasional interactions with groups of people. The Court finds that the ALJ's decision shows that he considered the subjective and objective evidence of Plaintiff's mental impairments and their impact on her ability to sustain social

interactions, and concluded that the record evidence did not support greater limitations than those in the RFC. On this record, the Court finds no basis for reversal.

Plaintiff also raises several other challenges to the ALJ's evaluation of her mental impairment, including that the ALJ found evaluations showed milder and more normal symptoms than Plaintiff actually experienced, ignored the waxing and waning nature of her impairments, discounted evidence that her medications had to be frequently changed, overlooked evidence about the frequency and severity of her panic attacks, and disregarded the likely impact of workplace stress on her limiting symptoms. The Court will consider each in turn below.

Plaintiff claims that the ALJ misrepresented evidence, incorrectly finding her mental impairment evaluation results to be milder and more normal than the rest of the record supports. Yet the Court has reviewed Plaintiff's treatment record and evaluations and finds that substantial evidence supports the ALJ's characterization of her assessments as generally mild and normal except for her mood. (*See e.g.*, Tr. at 362–63, 379–80, 512–14, 539–41, 594–95, 650, 762–63.)

Plaintiff also contends that the ALJ discounted the evidence that she often needed to change medications, showing that medication was not addressing her anxiety or depression symptoms effectively and that her symptoms waxed and waned. While it is true that Plaintiff's medications changed during the years relevant to the ALJ's decision and that she testified she had not "found the right medication yet to help [her] anxiety" during the July 13, 2022 hearing, it is also true Plaintiff reported that medications helped with her symptoms. (*See, e.g.*, Tr. at 61, 374, 384, 388–89, 417, 522–24, 591, 781–82.) The ALJ

considered "the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken" as well as "treatment other than medication the claimant receives or has received," and concluded that with treatment and medication, Plaintiff's anxiety was generally controlled. (Tr. at 24–25, 27.) Plaintiff herself also observed at the July hearing that therapy "has really helped me." (Tr. at 62.) The ALJ also noted that although Plaintiff's "treatment notes show some fluctuation in symptoms," her mental status exam findings were generally within the normal range. (Tr. at 28.) The Court thus finds that the ALJ did not disregard the fluctuating nature of her mental impairment symptoms, but instead found that the overall course of treatment showed Plaintiff's symptoms improved with medications and treatment. Substantial evidence in the record therefore supports the ALJ's evaluation of the efficacy of medications in treating Plaintiff's conditions, even though dosages and types of medications, as well as Plaintiff's symptoms, fluctuated over the course of the relevant period.

Plaintiff also argues that the ALJ discounted the severity and frequency of her panic attacks despite record evidence to the contrary. Here again, the Court finds that the ALJ considered evidence of the limiting symptoms of Plaintiff's panic attacks, classifying her panic disorder as a "severe" impairment. (Tr. at 20.) The ALJ considered portions of the record showing an increase in panic attacks in 2020, but noted that her attacks appeared to improve over time with medication, resulting in a finding that she had a moderate limitation in her ability to interact with others at the time of the ALJ's decision. (Tr. at 22, 25, 27–28.) The Court has reviewed the record and agrees that substantial evidence in the record supports the ALJ's conclusion that medication reduced the frequency of Plaintiff's panic

attacks, and therefore finds no basis for reversal as to the ALJ's analysis of Plaintiff's panic disorder. (*See, e.g.*, Tr. at 376, 382, 385, 388–89, 393, 395, 399, 403, 417.)

Additionally, Plaintiff claims that the ALJ erred by overlooking the impact of workplace stress under SSR 85-15, as well as the likelihood that stress would exacerbate symptoms associated with her mental impairments. SSR 85-15, however, only applies when an ALJ reaches step five in their analysis because they have determined that a plaintiff cannot perform their past relevant work. 1985 WL 56857, *1–2 (S.S.A. 1985) ("If a person has a severe medically determinable impairment which . . . prevents the person from doing past relevant work, it must be determined whether the person can do other work. . . . This PPS clarifies policies applicable in cases involving the evaluation of solely nonexertional impairments" related to other work determinations.) Here, the ALJ's analysis ended when he determined that Plaintiff could still perform her past relevant work. (Tr. at 29–30.) And regardless, the ALJ considered Plaintiff's subjective reports of her functional abilities when experiencing situational stress, including her hearing testimony that her symptoms fluctuate depending on her environment. (Tr. at 57.) Yet the ALJ ultimately determined that, based on the entire record, she had no more than a mild limitation in her ability to adapt or manage herself in stressful situations. (Tr. at 23.) On this record, the Court cannot find that the ALJ erred in his determination that Plaintiff's past work remained possible for her despite the limitations caused by her mental impairments, and despite the workplace stressors that she would likely experience in such a role.

III.   **SUBSTANTIAL EVIDENCE IN THE RECORD AS A WHOLE SUPPORTS THE ALJ'S RELIANCE ON THE VOCATIONAL EXPERT'S TESTIMONY THAT THE ALJ REASONABLY FOUND DID NOT CONFLICT WITH THE DOT.**

Plaintiff's final argument is that the ALJ should have found that she could not perform her past secretarial work because it requires a level of interaction that exceeds the social limitations in Plaintiff's RFC limiting her to only occasional interactions with groups of people. As support for this position, Plaintiff cites to the requirements of the occupation of secretary as described in the DOT, which require that an individual engage in frequent talking and hearing. *See* U.S. Dep't of Labor, *DOT*, § 201.362-030 (4th ed. 1991) (stating that talking and hearing are required "from 1/3 to 2/3 of the time").

The Commissioner argues that the ALJ properly elicited and relied on the vocational expert's testimony that Plaintiff could still perform her past relevant work despite her social limitations. He contends that the ALJ received testimony supporting that Plaintiff could perform the occupation of a secretary according to DOT No. 201.362-030, and that the testimony did not conflict with the DOT. The Commissioner further asserts that, to the extent that the expert's testimony conflicted with the DOT, the expert permissibly based his conclusions on his experience, education, training, and observation. The Court agrees with the Commissioner's position on this point for the reasons below.

At step four in an ALJ's analysis of disability, the ALJ must decide whether a claimant can still do their past work given their limitations. 20 C.F.R. § 404.1520(a)(4)(iv). This involves a comparison of an ALJ's "assessment of [a claimant's] residual functional capacity with the physical and mental demands of [a claimant's] past relevant work." *Id.*

§ 404.1560(b). In performing this assessment, an ALJ may evaluate a plaintiff's subjective testimony, evidence submitted from other people who know about a plaintiff's past work, as well as "the services of vocational experts . . . , or other resources, such as the [DOT] and its companion volumes and supplements, published by the Department of Labor, to obtain evidence" on "whether [a claimant] can do [their] past relevant work, given [their] residual functional capacity." *Id.* § 404.1560(b)(2). "A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." *Id.* An ALJ's reliance on the testimony of a vocational expert concerning past relevant work abilities is proper under the governing regulations. *See Foster v. Astrue*, 461 F. App'x 516, 517 (8th Cir. 2011) (per curiam) ("the ALJ properly relied on the testimony of a vocational expert to find that [the plaintiff] could perform his past relevant work.") (citing *Wagner v. Astrue*, 499 F.3d 842, 853–54 (8th Cir. 2007)).

When receiving a vocational expert's testimony, an ALJ must ask whether their testimony conflicts with the DOT and, if so, must follow the procedure provided by SSR 00-4p. *See* SSR 00-4p, 2000 WL 1898704, at *2–4 (Dec. 4, 2000); *see also Moore v. Colvin*, 769 F.3d 987, 989–90 (8th Cir. 2014). Under SSR 00-4p, "[w]hen there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [expert] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2. When there is a conflict, neither the DOT nor the

expert testimony automatically takes priority; instead, the ALJ "must resolve the conflict by determining if the explanation given by the [expert] is reasonable and provides a basis for relying on the [expert] testimony rather than on the DOT information." *Id.* "The adjudicator must explain the resolution of the conflict." *Id.* at *4.

Here, the vocational expert testified at the July 13, 2022 hearing that Plaintiff's past work was properly classified as a secretary according to the occupational description contained in DOT No. 201.362-030 that involves the "use of computers and phones and typical office equipment." (Tr. at 63–64.) The ALJ then asked the vocational expert to consider whether a person with limitations like Plaintiff's who was "limited to occasional interactions with groups of people" could still perform their past work based on Plaintiff's subjective testimony that groups of people caused her anxiety. (Tr. at 65–66.) The vocational expert noted that this limitation is "not defined in the DOT specifically," but concluded that "based on my experience, education and training, . . . secretaries largely do not do that, do not work with groups" but rather "with individuals," leading the expert to conclude that "I do think the past work word [sic] could be performed." (Tr. at 66.) The ALJ then asked whether, if a person with limitations like Plaintiff's were limited to "occasional interactions with people," they could still perform their past work. (*Id.*) The vocational expert responded that they could not because a secretary would typically be limited to occasional interactions with people. (*Id.*)  The ALJ asked whether the vocational expert's testimony had been consistent with the DOT, and the expert answered that it had been. (Tr. at 67.) When the ALJ then asked if Plaintiff's counsel had any questions for the

vocational expert, she responded that she did not because "[t]he hypotheticals with the social restrictions" were the testimony she wished to solicit. (Tr. at 67–68.)

The ALJ ultimately adopted an RFC that limited Plaintiff to "occasional interactions with groups of people." (Tr. at 24.) He explained that "[t]he vocational expert testified that the claimant is capable of performing her past relevant work as a secretary given the above residual functional capacity, and the undersigned finds this testimony to be persuasive." (Tr. at 29.) He therefore concluded that "[t]his job can be performed within the limitations from the residual functional capacity, including the restriction on interactions with groups." (*Id.*)

The Court finds that the ALJ properly considered and relied on the testimony of the vocational expert. Specifically, the ALJ solicited testimony about Plaintiff's past work classified as a secretary, asked whether that work could still be performed if Plaintiff were limited to only occasional interactions with groups of people, and received the ALJ's testimony that Plaintiff could still perform her past work with this limitation. Additionally, the vocational expert testified his opinion was based on his own knowledge and experience, rather than the DOT, because the DOT did not discuss how often a person in the occupation of a secretary must be able to socially interact with groups of people. The ALJ also fulfilled the requirements of SSR 00-4p because he asked whether the vocational expert's testimony conflicted with the DOT, and received the expert's confirmation no conflict existed. Even though an ALJ is not absolved of their duty to ensure that the vocational expert's testimony is consistent with the DOT just because the expert testifies that the two are consistent, *see Moore*, 769 F.3d at 990, it is clear from the vocational expert's testimony here that the

DOT could not conflict with an area on which it was silent—the DOT does not articulate the expected frequency of social interactions with groups of people that a secretary must be able to sustain. *See generally* U.S. Dep't of Labor, *DOT*, § 201.362-030. The Court thus concludes that the ALJ reasonably relied on the testimony of the vocational expert as to this limitation when determining that Plaintiff could still perform her past relevant work, and finds that testimony constitutes substantial evidence in the record supporting the ALJ's decision. *See Biestek*, 139 S. Ct. at 1154.

### ORDER

Based on the above, as well as the files, records, and proceedings in this case, **IT IS ORDERED** that:

1.  Plaintiff's Motion (Doc. 10) is **GRANTED IN PART** and **DENIED IN PART**;

2.  Defendant's Motion (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART**; and

3.  This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  August 27, 2024                    *s/Douglas L. Micko*
                                           DOUGLAS L. MICKO
                                           United States Magistrate Judge

26